UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS GUZEK and SUSAN GUZEK, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> WELLS FARGO BANK, N.A., and ) <br> FEDERAL HOME LOAN MORTGAGE ) <br> CORP., ) <br> ) <br> Defendants. ) | No.  4:11CV02054 AGF |

## MEMORANDUM AND ORDER

This diversity case is before the Court on Defendants' motion for summary judgment.  In their three-count complaint, Plaintiffs Thomas and Susan Guzek (husband and wife) claim wrongful foreclosure, defamation, and interference with Plaintiffs' credit expectancy.  For the reasons set forth below, Defendants' motion for summary judgment shall be granted.

## BACKGROUND

The record establishes the following.  On January 29, 2003, Plaintiffs obtained a residential loan from Wells Fargo Home Mortgage, Inc. ("WFHM, Inc.") in the amount of $321,600.  Plaintiffs signed a promissory note agreeing to pay the loan back in monthly installments of $2,670.60 beginning on March 1, 2003, and ending on March 1, 2018.  (Doc. No. 34-2.)

The note was secured by a Deed of Trust encumbering the property in question. WFHM, Inc., was identified as the Lender and Grantee and Alan South was identified as the Trustee. The Deed of Trust included the following: "Lender, at its option, may from time to time remove Trustee and appoint a successor trustee . . . ." (Doc. No. 34-3.) On May 8, 2004, Wells Fargo Bank, N.A. executed a Limited Power of Attorney giving Wesley Kozeny and Garry McCubbin of the firm Kozeny & McCubbin, LC, ("K&M") authority to conduct foreclosures for Wells Fargo Bank, N.A. (Doc. No. 34-10.) On May 11, 2006, Wells Fargo Bank, N.A. appointed K&M as successor Trustee instead of Alan South with respect to the above Deed of Trust. (Doc. No. 34-11.)

Plaintiffs defaulted on their loan payments on April 1, 2009, and began discussions for modification of the repayment plan in order to avoid foreclosure. On October 26, 2010, Thomas Guzek spoke on the telephone with Linda Parker, an Executive Mortgage Specialist with Wells Fargo Home Mortgage ("WFHM"), and verbally agreed to a new repayment plan which called for an immediate payment of $25,000, followed by seven monthly payments of $5,470.62 each, beginning on December 1, 2010. On November 1, 2010, Plaintiffs sent $20,000 to WFHM and Mr. Guzek informed Ms. Parker by email that the remaining $5,000 would be sent two days later.[1]  Ms. Parker acknowledged the two day delay. On November 2, 2010, before sending the $5,000 payment, Plaintiffs received a letter from WFHM dated October 26,

---

[1] This and subsequent emails described above appear in the record as Doc. No. 34-6.

2010, offering a Special Forbearance Plan that called for 12 monthly payments of $5,470.62 each, beginning on November 1, 2010, with no mention of an initial larger payment. (Doc. Nos. 34-7 and 45-3.)

On Tuesday, November 2, 2010, at 10:17 a.m., Mr. Guzek emailed Ms. Parker, telling her that he had received this letter and Special Forbearance Agreement, asking what the difference was between the verbal agreement he had with her and the offer in the letter, and stating, "I would rather complete the program as specified in the offer letter. Please advise." Two minutes later Ms. Parker responded by email as follows: "You are getting another letter. I advised our loss mitigation area that we need the $25,000.00 listed as the 1st pmt, not what is outlined in this letter. Very sorry for the confusion!" At 10:43 a.m., Ms. Parker sent another email, stating that the $20,000 payment had been received and that she was waiting for the additional $5,000.

At 2:49 p.m., Mr. Guzek emailed Ms. Parker that he called "the Wells Fargo group" and was told there "were actually two different plans" in his file. Mr. Guzek told Ms. Parker that he preferred the 12-payment plan, and had signed and returned the agreement for that plan. He asked Ms. Parker to apply the $20,000 to the 12 monthly payments and stated he would not be sending an additional $5,000 payment at that time. At 3:02 p.m., Ms. Parker responded that the 12-payment plan had been generated in error and that the agreement of $25,000 plus seven payments of $5,470.62 was still in place.

At 3:23 p.m., Mr. Guzek emailed Ms. Parker that he had accepted the 12-payment plan and expected that it would be honored. Ms. Parker responded that the operative plan

was the one agreed to verbally on October 26, 2010, and allegedly sent to Mr. Guzek the next day, and that the 12-payment plan "sent to you in error will not be honored as it was not what we discussed."

On November 4, 2010, Ms. Parker emailed Mr. Guzek, inquiring into when the additional $5,000 payment would be paid, and informing him that if the payment was not received by November 8, 2010, the verbal agreement would become void.  By email to Ms. Parker dated November 9, 2010, Mr. Guzek complained that as the written offer of the 12-payment plan was dated October 26, 2010, it must have been approved by the holder of the note ("the investor") prior to that date and he should have been informed of this offer before any further negotiations took place between him and Ms. Parker.  He stated that he did not receive paperwork regarding the October 26, 2010 verbal agreement until November 5, 2010.

In an email sent on November 15, 2010, at 9:46 a.m. Ms. Parker told Mr. Guzek that the "investor" agreed to a "new plan," which incorporated Plaintiffs' entire delinquency including an "escrow advance balance of $23,667.51."  This plan called for nine monthly payments of $6,535.49 each beginning on December 15, 2010.  Mr. Guzek rejected the plan on the same day by email at 7:08 p.m.  The next day, Ms. Parker informed Mr. Guzek by email that if he did not make the payments per the October 26, 2010 verbal agreement, WFHM would initiate foreclosure.

On January 6, 2011, WFHM returned the $20,000 payment to Plaintiffs.  That same day K&M notified Plaintiffs that a foreclosure sale was scheduled for January 28,

2011.  K&M conducted the foreclosure sale as scheduled.  Defendant Federal Home Loan Mortgage Corp. was the successful bidder.

Plaintiffs filed their complaint in state court on October 24, 2011.  Defendants removed the action on November 23, 2010, based on diversity jurisdiction.

Count I asserts a claim of wrongful foreclosure.  Plaintiffs state that they were not in default at the time of foreclosure because they had previously accepted the terms of the 12-payment plan and paid WFHM $20,000, which was sufficient to cover the first three payments.  Plaintiffs ask the Court to declare the foreclosure void and "to return [Plaintiffs] to their *ex ante* position."  In addition, Plaintiffs assert that the foreclosure was wrongful because K&M was not a valid successor trustee of the Deed of Trust and thus not entitled to enforce the promissory note.

In Count II, Plaintiffs seek damages for defamation, alleging that Defendants reported to various credit bureaus that Plaintiffs were in default and that this was false.  And in Count III, labeled "Intentional Interference with Credit Expectancy,"  Plaintiffs claim that as a result of Defendants' alleged defamatory statements and illegal foreclosure, Plaintiffs have been unable to obtain credit, justifying an award of punitive damages against Defendants.

## ARGUMENTS OF THE PARTIES

Defendants argue that they are entitled to summary judgment on Plaintiffs' claim for wrongful foreclosure because the undisputed facts establish that Plaintiffs were in default under the Note and Deed of Trust; that Wells Fargo Bank, N.A. was the party

entitled to enforce the Note and Deed of Trust; and that K&M was validly appointed as Successor Trustee. They argue that Plaintiffs cannot rely on the October 26, 2010 written offer for a 12-payment plan because the undisputed facts show that Plaintiffs knew that offer had been sent in error. In support of their motion, Defendants submit the affidavit of Ms. Parker in which she attests that, among other things, WFHM, Inc., is now known as WFHM, a division of Wells Fargo Bank, N.A., and that Wells Fargo Bank, N.A., is the successor by merger to WFHM, Inc.

Defendants argue that Plaintiffs are unable to support a defamation claim because Defendants' statements to credit bureaus regarding Plaintiffs' default were truthful. Similarly, Defendants argue that Plaintiffs cannot prove a claim for intentional interference with a credit expectancy because Defendants acted within their rights to satisfy Plaintiffs' outstanding debt.

Plaintiffs respond that summary judgment is unwarranted because there is a factual question regarding whether the verbal loan forbearance agreement of $25,000 plus seven monthly payments or the written 12-payment loan forbearance agreement governed. Plaintiffs also argue that WFHM, Inc., was the lender and it alone had the power to substitute the trustee of the Note, but Wells Fargo Bank, N.A., not WFHM, Inc., appointed K&M as the successor trustee. In response to Ms. Parker's affidavit that Wells Fargo Bank, N.A., is the successor by merger to WFHM, Inc., Plaintiffs assert that the facts and validity of the merger are unknown, and that the factual question regarding the validity of the merger render summary judgment inappropriate. If the merger was not

valid, then the appointment of K&M as the Successor Trustee was also invalid and K&M did not have the authority to conduct the foreclosure sale.

## DISCUSSION

Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party.  *Minn. Deli Provisions, Inc. v. Boar's Head Provisions Co.,* 606 F.3d 544, 548 (8th Cir. 2010).

> Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.  The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].

*Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011) (citations omitted).  "The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citations omitted).

Under Missouri law, the term "wrongful foreclosure" has been used both in suits in equity as a basis for setting aside a foreclosure sale and in suits at law as a basis for

recovering tort damages. *Fields v. Millsap & Singer, P.C.*, 295 S.W.3d 567, 571 (Mo. Ct. App. 2009). "A foreclosure is invalid when a circumstance denies the mortgagee the right to cause the power of sale to be exercised. One circumstance that may render a foreclosure sale void arises when the foreclosing party does not hold title to the secured note." *Ball v. Bank of NY,* No. 4:12-CV-00144-NKL, 2012 WL 6645695, at *3 (W.D. Mo. Dec. 20, 2012) (citations omitted). Alternatively, "a plaintiff seeking damages for wrongful foreclosure must plead and prove that when the foreclosure proceeding was begun, there was no default on [his] part that would give rise to a right to foreclose." *Lackey v. Wells Fargo Bank, N.A.*, No. 11-1067-CV-W-DGK, 2012 WL 4801080, at *4 (W.D. Mo. Oct. 9, 2012) (citation omitted); *see also Dobson v. Mortg. Elec. Registration Sys. Inc./GMAC Mortg. Corp.*, 259 S.W.3d 19, 22 (Mo. Ct. App. 2008).

      Here, Plaintiffs have produced no evidence to call into question the validity of the merger attested to by Ms. Parker, the Limited Power of Attorney giving K&M authority to conduct foreclosures for Wells Fargo Bank, N.A., or the appointment of K&M as Successor Trustee. Therefore, Plaintiffs' claim of wrongful foreclosure depends on their contention that they were not in default at the time of foreclosure. This contention is based on Plaintiffs' argument that they accepted the offer of the 12-payment plan, and their $20,000 payment meant that they were not in default at the time of foreclosure. Based on the record, the Court concludes that Mr. Guzek's inquiry into the terms of the 12-payment plan and expression of preference for that plan does not constitute acceptance. Plaintiffs sent the $20,000 to Defendants pursuant to the October 26, 2010

verbal agreement, and did not ask Defendants to apply the payment to the 12-payment plan until after they were told that the offer for the 12-payment plan was a mistake.  A party cannot form a binding agreement by accepting terms it knows to be mistaken.  *See Sheinbein v. First Boston Corp.*, 670 S.W. 2d 872, 876-77 (Mo. Ct. App. 1984).  Thus Defendants are entitled to summary judgment on the wrongful foreclosure claim.  *See Pace v. Wells Fargo Bank, N.A.*, No. 4:11-CV-489 CAS, 2012 WL 3705088, at *8-9 (E.D. Mo. Aug. 27, 2012).

Plaintiffs' remaining claims fail because they are dependent upon Plaintiffs not being in default on their loan, or on the foreclosure being otherwise invalid.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED** on all claims. (Doc. No. 33.)

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 10th day of January, 2013